IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

MARTIN L.,

    **Plaintiff,**

v().

    Civil Action 3:23-cv-318
    Judge Thomas M. Rose
    Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF**
**SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Martin L., brings this action under 42 U.S.C. § 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for social security disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 12), Plaintiff's Reply (ECF No. 13), the administrative record (ECF No. 7), and the supplemental administrative record (ECF No. 9). For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

I.    BACKGROUND

Plaintiff previously applied for DIB and SSI on May 1, 2019, alleging that he had been disabled since August 13, 2018, due to "COPD, Chronic fatigue from shortness of breath, Cervical Disc disease with [surgery] 1/18, limited [range of motion] cervical spine, [chronic] thoracic and lumbar spine with [right] leg involvement, insomnia, panic attacks because of shortness of breath, and 2nd [right] rotator cuff surgery 5/23/19." (R. at 221-32, 240-46, 270.) Plaintiff's application was denied initially in August 2019 and upon reconsideration in November 2019. (R. at 74-137, 145-72.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 174-88.) On October 6, 2020, Plaintiff, represented by counsel, appeared and testified at a hearing before an administrative law judge. (R. at 37-73.) On November 24, 2020, Kevin R. Barnes (the "ALJ") issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 7-31.) The Appeals Council denied Plaintiff's request for review, and he filed suit in this Court. *See* [*Martin L.*] *v. Comm'r of Soc. Sec.*, S.D. Ohio Case No. 3:21-cv-244. Upon a joint motion by the parties, this Court remanded the matter for further proceedings. (R. at 1237-42.)

On remand, the claim was returned to ALJ Barnes. After a hearing on October 27, 2022, ALJ Barnes issued a partially favorable decision on November 23, 2022, finding that Plaintiff became disabled beginning on August 26, 2021, the date his age category changed, but he was not eligible for benefits prior to that date because he was not under a "disability" as defined in the Social Security Act. (R. at 1158-87.) Plaintiff did not request review by the Appeals Council opting to directly file suit with this Court. This matter is properly before this Court for review.

## II. RELEVANT RECORD EVIDENCE

The Undersigned has thoroughly reviewed the transcript in this matter, including Plaintiff's medical records, function and disability reports and testimony as to his conditions and resulting limitations. Given the claimed errors raised by the Plaintiff, rather than summarizing that information here, the Undersigned will refer and cite to it as necessary in the discussion of the parties' arguments below.

## III. ADMINISTRATIVE DECISION

On November 23, 2022, the ALJ issued his decision. (R. at 1158-87.) The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2023. (R. at 1165.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff has not engaged in substantially gainful activity since August 13, 2018, the alleged onset date. (*Id.*) The ALJ found that since August 13, 2018, Plaintiff has had the following severe

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

impairments: COPD, chronic bronchitis, cervical degenerative disc disease, migraines, status post right rotator cuff surgery, neurogenic claudication, right knee arthritis, myalgia, macrocytosis, carotid artery disease, obesity, depression, and anxiety. (*Id.*) The ALJ further found that since August 13, 2018, Plaintiff has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 1170.)

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, [the ALJ] find[s] that since August 13, 2018, [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) subject to the following limitations: (1) occasionally climbing ramps and stairs, balancing, stooping, kneeling, and crouching; (2) never climbing ladders, ropes, or scaffolds, or crawling; (3) occasional overhead reaching with the right upper extremity; (4) avoid concentrated exposure to environmental irritants (e.g., fumes, odors, dust and gas), poorly ventilated areas, and industrial chemicals; (5) avoid hazardous machinery and unprotected heights; (6) performing short-cycle tasks; (7) no work with fast-paced demands, strict time limitations, or production standards; (8) occasional interaction with coworkers and the public; (9) no tandem tasks; and (10) a set routine where major changes are explained in advance and gradually implemented to allow [Plaintiff] time to adjust to new expectations.

(R. at 1172-73.)

At step four of the sequential process, the ALJ determined that since August 13, 2018, Plaintiff has been unable to perform any past relevant work. (R. at 1176.) Prior to August 26, 2021, however, the ALJ concluded that transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Plaintiff was "not disabled" whether or not Plaintiff has transferable job skills. The

4

ALJ then determined that, beginning on August 26, 2021, Plaintiff has not been able to transfer job skills to other occupations. (*Id.*) Based on the VE's testimony, the ALJ concluded at Step 5 that prior to August 26, 2021, the date Plaintiff's age category changed, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed such as a mail clerk, photocopy machine operator or cleaner/housekeeper. (R. at 1177.) Further, the ALJ determined that, beginning on August 26, 2021, the date Plaintiff's age category changed, considering Plaintiff's age, education, work experience, and residual functional capacity, there were no jobs that exist in significant numbers in the national economy that Plaintiff could perform. (R. at 1178.) The ALJ therefore concluded that Plaintiff was not disabled prior to August 26, 2021, but became disabled on that date. (*Id.*)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**V.     ANALYSIS**

The primary issue Plaintiff raises here is straightforward. Plaintiff argues that the ALJ concluded that Plaintiff was limited in his ability to maintain effective social interaction on a consistent and independent basis with supervisors, co-workers and the public. Nevertheless, Plaintiff asserts, the ALJ, without explanation, failed to incorporate into the RFC any limitation as to Plaintiff's ability to interact with supervisors. Plaintiff argues that this unexplained failure prevents meaningful appellate review. The Court agrees. Because the Court finds this argument to be well-taken, it will not address Plaintiff's related but secondary argument that the ALJ erred by failing to explain why the opinion of the consultative examiner was not fully adopted.

The starting point for the Court's analysis is the ALJ's discussion of Plaintiff's limitations in interacting with others. That discussion relied on the opinions offered by consultative examiner Dr. Robert Kurzhals, Ph.D., and the DDD psychologists at the initial and reconsideration levels, all of which the ALJ found to be partially persuasive as follows:

> Based on his examination, Dr. Kurzhals diagnosed depressive and anxiety disorders and noted the claimant's self-reports of COPD, insomnia, high blood pressure, right shoulder pain status post, and cervical disc disease. His statements throughout the remainder of his examination report do not include the most precise or vocationally relevant terms, but do clearly indicate the claimant can understand, remember, and carry out one-step instructions even with deficits in social functioning and adapting to normal workplace pressures due to increased withdrawal and "strained" coping skills. These suggested limitations clearly give maximum benefit to the claimant's complaints of depressed mood and anxiety since there is comparatively little evidence of any effort at dedicated psychological treatment. On the other hand, Dr. Kurzhals seems to have overlooked imposing any concentration, persistence, or pace limitations which is particularly curious in view of the fact that the claimant's mental health functioning could be plausibly impacted by his physical health concerns which Dr. Kurzhals pointedly noted in his diagnoses. Therefore, it is found that Dr. Kurzhals' assessment is partially persuasive, and sufficient limitations for social interaction problems and managing normal pressures in a competitive work environment have been included in the mental residual functional capacity assessment discussed below to accommodate his suggested concerns.
>
> The genesis of the remand in this case is the treatment afforded to opinion evidence from the DDD psychologists (Exhibit 14A at 3-4). Kristen Haskins, Psy.D., evaluated the claimant's mental condition based on the evidence of record on August 14, 2019 (Exhibits 1A / 2A). In Dr. Haskins' opinion, the claimant has "severe" mental impairment of depressive, bipolar and related disorders and anxiety and obsessive-compulsive disorders. He experiences a mild limitation in his ability to understand, remember, or apply information. The claimant also has a mild limitation in his ability to interact with others. He has a moderate limitation in his ability to concentrate, persist, or maintain pace and adapt or manage oneself. According to Dr. Haskins, the claimant retains the mental capacity to perform short-cycle tasks in a setting without fast-paced demands or strict time limitations or production standards within a set routine where major changes are explained in advance and gradually implemented to allow time to adjust to new expectations. These findings were affirmed on reconsideration by DDD psychologist, Robyn Murry-Hoffman, Ph.D. (Exhibits 5A / 6A).

> The assessments of both DDD reviewing psychologists are partially persuasive. The claimant has never been hospitalized for psychiatric reasons and clearly has symptoms of no more than moderate severity which are responsive to medication treatment (Exhibits 11F at 51 / 15F at 78). Thus, to the extent that their limitations are consistent with the balance of the record, they have been incorporated in the residual functional capacity discussed at Finding No. 5. For example, both psychologists limited the claimant to performing short-cycle tasks in a setting with no pace or time or production requirements, reasonable restrictions in view of evidence of the claimant's ongoing pain and respiratory issues that could lead to some decrease in his cognitive processing. Drs. Haskins and Murry-Hoffman further restricted the claimant's ability to manage workplace stress, i.e., working in a setting with a set routine where major changes are explained in advance and gradually implemented to allow the claimant time to adjust to new expectations. These limitations are also appropriate in light of objective medical evidence of the claimant's longstanding history of medication management for anxiety (Exhibit 15F at 173). For these same reasons, it is entirely plausible that the claimant would have had social functioning difficulties especially given the nature of his most prevalent physical and mental symptoms, e.g., shortness of breath, chronic pain, depressed mood, and panic attacks. Therefore, when considered together, the restrictions for stress adaptation, short-cycle tasks without time/pace/production demands and only occasional interaction with coworkers and the public with no tandem tasks involved (included in the residual functional capacity discussed below) are sufficient to ensure that any tasks the claimant would have been compelled to have as part of his actual job duties fully accommodate any cognitive deficits, limited coping skills, and social functioning difficulties he might have experienced prior to the established onset date.

(R. at 1167-1168.)

Taking these opinions into consideration, the ALJ had this to say about Plaintiff's limitations in this domain:

> I find that [Plaintiff] has experienced a moderate limitation in his ability to interact with others. Among his psychological symptoms, [Plaintiff] alleges agitation (Exhibit 15F at 11) and panic attacks (Exhibit 15F at 115). He related in a depressed and somewhat distant manner during his evaluation by Dr. Kurzhals, but was still cooperative and friendly which is consistent with treatment records that describe [Plaintiff]'s behavior as very pleasant (Exhibit 12F) and his mood and affect as normal (Exhibits 3F/11F/15F). [Plaintiff] reported that he generally related adequately to coworkers and supervisors in the work setting (Exhibit 6F at 2), and

> he has never been terminated from a job because of problems getting along with others (Exhibit 3E at 8). Furthermore, he has been able to maintain positive relationships with family members (Exhibit 6F at 2) and is able to maintain non-familial relationships (Exhibits 3E at 6/6F at 3). This collective evidence is indicative of some retained ability to conform his behavior to socially acceptable standards of conduct and interact appropriately with those who are known to him as well. Thus according to the DDD reviewing psychologists, [Plaintiff] experiences only a mild limitation in his ability to interact with others. It is reasonable to expect that [Plaintiff] might experience some limitation in his ability to get along with others in the workplace given subjective reports of "intense" anxiety when short of breath (Exhibit 6F at 5) and daily depression (Exhibit 6F at 3). ***As such and in giving maximum consideration to the manifestation of such symptoms likely to have an impact on [Plaintiff]'s ability to relate to and work with supervisors, coworkers, and the public, particularly during flares of physical symptoms, I find that objective evidence establishes a moderate limitation in this area of functioning.***

(R. at 1169) (emphasis added).

Later in his discussion, the ALJ reconfirmed that "[f]or the reasons cited at Finding No. 3" he found that Plaintiff has experienced a "moderate limitation in his ability to interact with others …." (R. at 1174). The ALJ then concluded this part of his discussion by explaining that Plaintiff's "level of psychological limitation translates to the following specific functional restrictions" … including "an occupation with no more than occasional interaction with coworkers and the public and no tandem tasks." (*Id*.)

There is an inherent inconsistency between the ALJ's explicit recognition of the likely impact of Plaintiff's mental health symptoms and the lack of any restriction in the RFC relating to interactions with supervisors. And, it is not clear from the ALJ's discussion whether this exclusion was intentional or merely an oversight. Any explanation as to why the ALJ believed Plaintiff's mental health symptoms would impact his interactions with co-workers and the public but these same symptoms would have no impact on his interactions with supervisors is left to

9

speculation.  Thus, as it stands, the Court cannot trace the path of the ALJ's reasoning as it relates to Plaintiff's interactions with his supervisors.  The Commissioner, by focusing his entire rebuttal on the ALJ's evaluation of the medical opinions, has implicitly conceded that point.  Under this circumstance, the ALJ's failure constitutes reversible error.  *Johnson v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-99, 2021 WL 5177818, at *3 (S.D. Ohio Nov. 8, 2021) ("[B]y failing to explain why certain limitations were not incorporated into the RFC, an ALJ prevents the reviewing court from conducting a meaningful review to determine whether substantial evidence supports his decision."); *Lindsey v. Comm'r of Soc. Sec.*, No. 2:18-CV-18, 2018 WL 6257432, at *5 (S.D. Ohio Nov. 30, 2018), *report and recommendation adopted*, No. 2:18-CV-018, 2019 WL 133177 (S.D. Ohio Jan. 8, 2019) ("[T]he ALJ's failure to provide such an explanation requires remand because it prevents this Court from conducting meaningful review to determine whether substantial evidence supports his decision."); *see also Allen v. Astrue*, No. 5:11CV1095, 2012 WL 1142480, at *8 (N.D. Ohio Apr. 4, 2012) ("Because the ALJ did not provide an analysis that is sufficiently specific, Allen's argument that the ALJ failed to properly articulate the RFC calculation is well-taken. The Court is unable to trace the path of the ALJ's reasoning."); *Commodore v. Astrue*, No. 10–295, 2011 WL 4856162, at *4, 6 (E.D. Ky. Oct. 13, 2011) (remanding action "with instructions to provide a more thorough written analysis," where the ALJ failed to articulate the reasons for his RFC findings such that the Court could not "conduct a meaningful review of whether substantial evidence supports the ALJ's decision").  Accordingly, remand is required.

## VI. CONCLUSION

For these reasons, it is therefore **RECOMMENDED** that Plaintiff's Statement of Errors (ECF No. 10) be **SUSTAINED**, that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case under Sentence Four of § 405(g).

## VII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review by the District Judge and forfeiture of the right to appeal the judgment of the District Court. Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date:   **November 7, 2024**                              */s/ Elizabeth A. Preston Deavers*
                                                                                            **ELIZABETH A. PRESTON DEAVERS**
                                                                                            **UNITED STATES MAGISTRATE JUDGE**